# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 18-992V**
Filed: October 26, 2026

| | | |
|---|---|---|
| AFSHIN ARIAN, Petitioner, | * | |
| v. | * | Special Master Roth |
| SECRETARY OF HEALTH AND HUMAN SERVICES, Respondent. | * | |

*Lawrence R. Cohan, Esq.*, Saltz Mongeluzzi & Bendesky, Philadelphia, PA, for petitioner.
*Elizabeth Andary, Esq.*, U.S. Department of Justice, Washington, D.C., for respondent.

## RULING ON ENTITLEMENT[1]

**Roth**, Special Master:

On July 11, 2018, Afshin Arian ("Mr. Arian" or "petitioner") timely filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, et seq.[2] (the "Vaccine Act" or "Program"), alleging that the Hepatitis B ("Hep B") vaccination he received on April 14, 2017, caused him to develop Guillain-Barré Syndrome ("GBS") and subsequently chronic inflammatory demyelinating polyneuropathy ("CIDP"). Petition, ECF No. 1; Motion, ECF No. 54.

On June 29, 2023, petitioner filed the instant Motion for Ruling on the Record. ECF No. 54. Following careful review of all evidence, I find that petitioner has provided preponderant evidence that the Hep B vaccine he received was a substantial factor in causing his GBS/CIDP. Therefore, petitioner is entitled to compensation.

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned finds that the identified material fits within this definition, such material will be redacted from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

## I. Procedural History

The petition was filed on July 11, 2018 and assigned to the undersigned the following day. ECF Nos. 1, 4.

Petitioner filed his medical records over the following year. Petitioner's Exhibit ("Pet. Ex.") 1-9, ECF Nos. 6-7, 11, 19. Respondent filed his Rule 4(c) Report on June 21, 2019, advising this case was not appropriate for compensation. ECF No. 17.

At a December 3, 2019 status conference, inconsistencies in the medical records filed were discussed. Petitioner was ordered to file an expert report. ECF No. 21.

Following multiple extensions, on December 7, 2020, petitioner filed an expert report from Dr. Steinman.[3] Pet. Ex. 10, ECF No. 28. Following multiple extensions, on August 2, 2021 respondent filed an expert report from Dr. Leist.[4] Respondent's Exhibit ("Resp. Ex.") A, ECF No. 35. On October 22, 2021, respondent filed an expert report from Dr. Dooms.[5] Resp. Ex. D, ECF No. 37. Petitioner filed a responsive report from Dr. Steinman on March 14, 2022. Pet. Ex. 13, ECF No. 41.

A status conference was held on May 17, 2022 to discuss the expert reports filed. ECF No. 42. Also discussed was the potential that this matter may involve a *Shyface* analysis due to multiple health factors that may have contributed to the onset of petitioner's GBS/CIDP. It was noted that Hep B vaccines have been found to be associated with certain neurological injuries including GBS and CIDP with onset between 8 to 21 days post-vaccination. *See Peugh v. Secretary of Health & Human Servs.*, No. 99-638V, 2007 WL 1531666 (Fed. Cl. Spec. Mstr. May 8, 2007); *Gilbert v. Secretary of Health & Human Servs.*, No. 04-455V, 2006 WL 1006612 (Fed. Cl. Spec. Mstr. Mar. 30, 2006). Petitioner was ordered to file an affidavit detailing the onset of his symptoms and a supplemental expert report. ECF No. 42.

Petitioner filed the ordered affidavit and expert report on July 1 and on August 1, 2022. Pet. Ex. 14-15, ECF Nos. 44-45. Respondent filed responsive expert reports on October 14, 2022. Resp. Ex. F-G, ECF No. 48.

A status conference was held on February 22, 2023 at petitioner's request to discuss scheduling an entitlement hearing. ECF No. 50. Another status conference was held roughly one month later after the parties requested a briefing schedule for ruling on the record in lieu of an entitlement hearing. ECF Nos. 51-52.

---

[3] Dr. Steinman received his M.D. from Harvard University in 1973. He is a board-certified neurologist and an immunologist and is a Professor in the Department of Neurology at Stanford University. Pet. Ex. 10 at 1; Pet. Ex. 11.
[4] Dr. Leist received his Ph.D. in Biochemistry from the University of Zurich in 1985 and his M.D. from the University of Miami in 1993. He is board-certified in neurology and is a Professor of Neurology at Thomas Jefferson University. Resp. Ex. B.
[5] Dr. Dooms received his M.Sc. in Zoology and Biotechnology in 1991 and his Ph.D. in Biotechnology (Immunology) in 2000, both from Ghent University. He is an Assistant Professor of Microbiology and Medicine at Boston University School of Medicine. Resp. Ex. E.

Petitioner filed his Motion for Ruling on the Record on June 29, 2023. Motion, ECF No. 54. Respondent filed his Response on November 29, 2023. ECF No. 58. Petitioner filed his Reply on February 28, 2024. ECF No. 62.

This matter is now ripe for adjudication.

## II. Factual Background

### A. Medical History Prior to the Subject Vaccination

Petitioner, a dentist, had an unremarkable medical history prior to receiving the subject Hep B vaccine. Pet. Ex. 1 at 7, 15.

Petitioner presented to his primary care provider ("PCP") on April 7, 2017, after poking himself with a dental file used on a patient three days prior. Pet. Ex. 1 at 15. The record included "3 Hepatitis B vaccination(s) were previously administered" but also that "[i]t is unknown if the patient has been Hep B vaccinated." *Id*. Examination that day was normal. Petitioner had no fever, congestion, cough, or other symptoms. *Id*. at 16. He was assessed with exposure to a "blood-borne pathogen." The plan was to test for hepatitis B and C. *Id*. at 17.

Hepatitis B and C core antibody tests came back as non-reactive but also noted that petitioner had "immunity to hepatitis B virus" with Hep B surface antibodies.[6] Pet. Ex. 1 at 10-12.

Petitioner received the subject Hep B vaccine on April 14, 2017. Pet. Ex. 1 at 7.

### B. Medical History Post-Vaccination

On April 18, 2017, petitioner presented to Avencia Medical Center. He reported "generalized weakness and tingling and numbness in his [sic] both hands anf [sic] toes," "fever and sinus pressure," and "productive cough with yellow and green phlegm." Pet. Ex. 3 at 33. He also reported shortness of breath, nausea, sinus congestion, headache, fatigue, and feeling anxious and stressed. *Id*. He reported a "history of Hepatitis." *Id*. at 34. Petitioner was diagnosed with bilateral diffuse otitis externa and acute frontal sinusitis. *Id*. at 37. He was prescribed Tamiflu and Avelox and told to return to the ER if his symptoms worsened. *Id*. at 38.

Later that day, petitioner presented to Summerlin Hospital Emergency Department ("ED") following a fall due to weakness and paresthesia in his extremities for one day and a vaccination the day prior. Pet. Ex. 4 at 107, 129. He reported congestion and cough last week for which he was given medication and a Hep B vaccine. He was admitted for further testing and given Levaquin and Tamiflu. Urgent MRIs of the entire spine and brain performed were all normal. *Id*. at 59, 103-04, 117-18, 130. Echocardiogram was normal. *Id*. at 31. A lumbar puncture "revealed elevated

---

[6] Hep B core antigen is a <u>core</u> protein antigen that indicates the presence of replicating Hep B virus but does not protect against reinfection, whereas positive Hep B surface antigen is a <u>coat</u> protein antigen that indicates active or chronic infections and is protective against reinfection. *Hepatitis B- core antigen* and *surface antigen*, Dorland's Illustrated Medical Dictionary 103 (33rd ed. 2020).

protein," raising suspicion for GBS. He was initially treated with steroids then with IVIG. *Id*. at 59-60, 160. The assessment included GBS and "Postvaccination syndrome." *Id*. at 60, 130, 156.

On April 24, 2017, he had a pulmonary consult for shortness of breath and was noted to have developed GBS after receiving a Hep B booster. He developed paresthesia and paralysis of the lower extremities which progressed to his chest and face. He was "definitely weak" on exam that day with leg strength at 2-3 out of 5 and arm strength 3-4 out of 5. He had lost fine motor control. His labs, namely CBC, were normal. Pet. Ex. 4 at 65-66, 68, 140.

Petitioner was discharged to rehabilitation on April 25, 2017. The discharge summary included bilateral lower extremity weakness and bilateral upper and lower extremity paresthesia. He had completed a five-day course of IVIG but still had no reflexes in the lower extremities, proximal lower extremity weakness, upper and lower extremity weakness with paresthesia, and was still unable to walk. It was recommended that he be transferred to acute rehabilitation. Pet. Ex. 4 at 69.

Petitioner was admitted to Summerlin Rehabilitation but transferred back to Summerlin Hospital shortly thereafter on April 28, 2017 for worsening weakness from GBS "probably secondary to 2 recent hepatitis B vaccine booster," and to begin plasmapheresis treatment. Pet. Ex. 4 at 68-69, 1408-09. He returned to Summerlin Rehabilitation on May 3, 2017 for further therapy. *Id*. at 1433-34.

Petitioner's weakness worsened again and he was returned to Summerlin Hospital on May 8, 2017 for another course of plasmapheresis followed by another 5-day course of IVIG. Pet. Ex. 4 at 2997. It was noted that there was "some questionable history of upper respiratory infection but today upon questioning [] [petitioner] denies having that problem." *Id*. at 1811. The diagnoses included acute inflammatory demyelinating polyneuropathy ("AIDP") with onset around April 17, 2017. *Id*. After the second rounds of plasma exchange and IVIG, petitioner was noted to have made an "excellent recovery." *Id*. at 2997. He returned to Summerlin Rehabilitation on May 19, 2017 for inpatient physical and occupational rehabilitation to "maximize his functional recovery after the weakness from [AIDP]." *Id*. at 2997-98, 3031.

Petitioner underwent EMG/NCS testing on June 9, 2017. The impression for his upper extremities was chronic inflammatory demyelinating polyradiculopathy ("CIDP") and severe peripheral neuropathy; for his lower extremities, the impression was AIDP and severe peripheral neuropathy. Pet. Ex. 6 at 1-9; Pet. Ex. 7 at 4-12.

Petitioner presented to neurologist Dr. Veerappan on June 12, 2017, reporting two months of leg weakness, numbness in hands and feet, and tingling in his back and face. CIDP was noted alongside bilateral upper extremity, and AIDP was noted with bilateral lower extremity. Pet. Ex. 5 at 3. Upon examination, he had decreased reflexes and walked with a 2-wheeled walker. *Id*. at 4. The assessment was GBS, quadriparesis, and facial palsy. The plan was to do plasmapheresis followed by IVIG monthly for 12 months. The records includes that petitioner was "disabled at this time and will not be able to do any of his Dental duties." *Id*.

On June 14, 2017, petitioner presented to his PCP for follow up and reported feeling weaker with continued numbness. He reported a fall on June 8. Pet. Ex. 3 at 27-32.

Beginning on June 16, 2017, petitioner received ten plasmapheresis treatments and five days of IVIG completed on July 2, 2017. Pet. Ex. 4 at 3777-96, 4069.

Petitioner presented to the neurologist on July 17, 2017. It was noted that the NCS of bilateral upper extremities showed CIDP and severe peripheral neuropathy, while the NCS of bilateral lower extremities showed AIDP and severe peripheral neuropathy. He had been doing well since the latest rounds of plasmapheresis and IVIG. Pet. Ex. 5 at 5; Pet. Ex. 9 at 22.[7]

At a follow-up on July 25, 2017 with neurology, he reported increased numbness in his legs since his last appointment. He was using a walker to ambulate. Pet. Ex. 5 at 8. The record included a Hep B vaccination on 4/14, "started to get weak on 4/15,"[8] "started to get numbness in the feet and hands on 4/16," struggled to get to work on 4/17, and could not shave by 4/18. *Id.* at 9. He had positive EMG/NCS and CSF testing. CIDP was considered a possible diagnosis if petitioner's symptoms persisted beyond six months. The neurologist noted that the "[s]equence of events relating the condition in close proximity to the vaccination raises the strong possibility that Vaccination could have been the cause of his syndrome." *Id.*

Petitioner returned to the ED on August 2, 2017 and reported increased weakness in his legs over the past 2 days. His history of CIDP versus GBS with recent plasmapheresis and IVIG was noted. He reported some increased difficulty breathing attributed to postnasal drip and seasonal allergies. Pet. Ex. 4 at 763, 789. He was admitted for plasmapheresis. *Id.* at 792, 794. Neurology consultation the next day included GBS "that is gradually progressing with multiple episodes of upper and lower extremity weakness numbness and tingling sensation." *Id.* at 753. He received multiple rounds of plasmapheresis and IVIG. *Id.* at 811-31. He was discharged on August 12, 2017. *Id.*

On August 25, 2017, petitioner presented to Dr. Lewis for a second opinion. He reported 4 months of numbness and weakness in his hands and feet which started 2 days after a Hep B vaccine. He reported improvement after about 4 weeks of symptoms, then weakness again 2 weeks later. He had a total of 4 relapses since onset but was gradually improving. He denied any recent illness prior to the onset of his symptoms. Pet. Ex. 2 at 15-16. Another EMG/NCS study was abnormal and with evidence of demyelinating sensorimotor polyneuropathy, consistent with CIDP, but was slightly improved compared to the prior EMG/NCS study. *Id.* at 7, 19. Dr. Lewis noted that:

> The onset of symptoms occurred 2 days after hepatitis B vaccination. The patient's CIDP is possibly related to the hepatitis B vaccination and the patient did not have any other prodromal symptoms or illnesses prior to the onset of symptoms. There

---

[7] The updated neurology records listed on the docket as Exhibit 9 appear to have been inadvertently labeled Exhibit 10. For clarity, the updated neurology records (located at ECF No. 19) are referenced herein as Exhibit 9.

[8] Petitioner averred that he "began to experience some numbness and tingling" on April 16, 2017, rather than April 15. Pet. Ex. 14 at 1.

> is no literature currently supporting a direct association between CIDP and hepatitis vaccination but the patient's clinical time course suggests an association.

Pet. Ex. 2 at 19. Examination that day revealed sensory loss and areflexia. Petitioner's IVIG dosage was increased. *Id*.

Petitioner had a routine follow up on September 14, 2017 with his PCP. He reported continued tingling, numbness, and weakness, although the weakness was improving. The diagnosis was GBS and seasonal allergic rhinitis, among others. Pet. Ex. 3 at 3, 7.

Petitioner returned to Dr. Veerappan on September 18, 2017, who noted that 80% of petitioner's numbness had resolved and 85% of his strength had returned. Petitioner did not have "any deterioration like before" and most of his numbness was confined to his hands and feet. Pet. Ex. 5 at 11. His diagnoses at this appointment included both GBS and CIDP. *Id*. at 12. Dr. Veerappan wrote, "[it is] more likely than not [his condition] is related to the vaccination that he received as there was no other prodromal event prior to the illness." *Id*.

Petitioner returned to Dr. Veerappan on December 11, 2017 and on February 12, 2018, reporting all over muscle pain and tingling and numbness in both hands. He had sold his dental practice after being unable to return to work due to hand weakness. IVIG was ordered four times weekly for 6 months. Pet. Ex. 9 at 13-17.

On May 21, 2018, petitioner presented to Dr. Veerappan with severe right shoulder muscular pain, continued tingling and weakness, and worsening numbness in his extremities. Pet. Ex. 6 at 10-12. His strength and numbness overall were the same as at his last appointment. He continued to walk with a two-wheeled walker and had decreased sensation and reflexes. He also had difficulty writing and typing. *Id*. at 11. The assessment included CIDP, among others. *Id*. at 11-12. Petitioner was prescribed IVIG three times weekly for three months. *Id*. at 12.

Petitioner continued to receive IVIG infusions. He had some improvement but still had ongoing symptoms as of the most recent records filed. *See generally* Pet. Ex. 9.

**C. Petitioner's Affidavit**

Petitioner executed an affidavit on June 30, 2022. Pet. Ex. 14. Petitioner averred that his memory is "very clear" regarding his vaccination and symptom onset. *Id*. at 1.

On April 7, 2017, he underwent blood testing for Hepatitis B antibodies then received the subject Hep B vaccine on April 14, 2017. On April 16, 2017, he began to experience some numbness and tingling, which progressed to his hands and toes by April 18, 2017. Pet. Ex. 14 at 1.

On April 18, 2017, he presented to Dr. Mojtabavi, an internist. He recalled that he "had some congestion due to [his] chronic allergy condition. No infection was confirmed that [he was] aware of." Petitioner was diagnosed with acute frontal sinusitis and prescribed something but did not fill the prescription or take any medication because he fell at the pharmacy "due to muscle weakness." Pet. Ex. 14 at 1.

Petitioner averred that he could not have had an active infection in the days preceding his receipt of the vaccine because he "knew it is highly recommended not to receive any vaccination if there is any active infection or illness." He suffered from seasonal allergies for years and takes Flonase but sometimes needs stronger medications. April is typically the worst month for his allergies. To the best of his knowledge, he did not have a cold or the flu in April of 2017 and recalled attending a family reunion during that time with no difficulty other than his typical spring allergies. Pet. Ex. 14 at 2.

## III. Expert Opinions[9]

### A. Petitioner's Expert, Dr. Lawrence Steinman

Dr. Steinman explained that GBS is a disorder that occurs when the body's immune system attacks parts of the peripheral nervous system, resulting in symptoms like weakness, tingling, and eventually near paralysis. Pet. Ex. 10 at 6. CIDP is the chronic, evolved form of GBS. *Id*. at 6, 7-8; Pet. Ex. 12c.

Relying on a theory of molecular mimicry, Dr. Steinman opined that the vaccination petitioner received triggered a recall response to the Hepatitis B surface antigen ("HepBsAg"), which is a molecular mimic of contactin-1 present in the human nervous system. "The resulting immune response triggered GBS that evolved into the more chronic form of inflammatory neuropathy" known as CIDP. Pet. Ex. 10 at 2, 10, 21; Pet. Ex. 13 at 4, 8; Pet. Ex. 15 at 3.

Dr. Steinman explained that contactin-1 is a protein in the peripheral nervous system and has been identified as a potential target in CIDP. Pet. Ex. 10 at 10, 17-18; Pet. Ex. 12k; Pet. Ex. 12l; Pet. Ex. 13 at 4. He conducted a BLAST search then filtrated the results through the Immune Epitope Database to identify amino acid sequences that are present in both the Hep B vaccine and contactin-1. Pet. Ex. 10 at 8, 10. When there is sufficient homology in the amino acid sequences, even if not consecutive, cross reaction may occur and result in autoimmunity. *Id*. at 10, 11-14. Here, Dr. Steinman identified a sequence present in HepBsAg (NILSPFLPLLPI) in the vaccine and in contactin-1 (SVFSKFIPLIPI), which have six amino acids in common. *Id*. at 14-18. He provided three studies which demonstrate that sequences with 5 identical amino acids are sufficient to induce autoimmunity. *Id*. at 11-14; Pet. Ex. 12m; Pet. Ex. 12n; Pet. Ex. 12o; Pet. Ex. 13 at 5.

Dr. Steinman argued that the "only potentially competing diagnosis was a frontal sinusitis" diagnosed on April 18, 2017 when petitioner presented for a sick visit and was prescribed Tamiflu. Pet. Ex. 10 at 22. However, the origin of the frontal sinusitis was not identified; Dr. Steinman therefore placed more weight on the "known vaccine" as the cause of petitioner's CIDP, rather than on "an unknown infection." *Id*.; Pet. Ex. 13 at 1-2, 7. Further, petitioner's treating neurologist attributed his CIDP to the vaccine and his records indicated that he had "no other prodromal symptoms or illnesses prior to the onset of symptoms." Pet. Ex. 10 at 22; Pet. Ex. 2 at 19.

Finally, Dr. Steinman asserted that petitioner's symptoms began within two days of his receipt of the subject Hep B vaccine, which is a medically reasonable timeframe to expect onset

[9] The citations to the medical literature can be found in the Appendix.

because he had a recall response. Pet. Ex. 10 at 18-19. Generally, *Schonberger*, which studied the 1976 swine flu vaccine, shows GBS onset 1-3 days after flu vaccination. *Id.* at 20; Pet. Ex. 12s. When antibodies are already present, like here, the additional exposure will immediately trigger T and B memory cells which in turn can cause symptoms within 1-2 days. Pet. Ex. 10 at 18-19; Pet. Ex. 12o; Pet. Ex. 12p; Pet. Ex. 12q; Pet. Ex. 12r. Here, petitioner's Hep B antibody was "flagged" at 10 when measured on April 7, 2017, indicating that he had some antibodies to HepBsAg either from prior Hep B vaccinations or Hep B exposure. Pet. Ex. 10 at 18. Therefore, onset of symptoms within 2 days of vaccination is reasonable in this case. *Id.* at 22.

### B. Respondent's Expert, Dr. Thomas Leist

Dr. Leist agreed that petitioner suffered from GBS but argued that Hep B vaccine is not a known cause of GBS. Resp. Ex. A at 13. His summary of the medical records included petitioner's diagnoses of both GBS and CIDP, but he noted that his opinion in this case "does not depend on whether [he] is found to have GBS or CIDP." *Id.* at 8. Dr. Leist submitted that there is no significant homology between the HepBsAg and myelin proteins (MOG, MBP, and PLP). *Id.* at 9; Resp. Ex. A Tab 4; Resp. Ex. G at 3-4. Moreover, there is no evidence that the Hep B vaccine triggers cross-reaction with contactin-1. Resp. Ex. G at 2, 5. He asserted that The Institute of Medicine found "'that the evidence is inadequate to accept or reject a causal relationship between hepatitis B vaccine and GBS.'" Resp. Ex. A at 8; Resp. Ex. A Tab 4. Despite noting a possible association with Hep B vaccine, Dr. Leist pointed out that petitioner's neurologist concurred that "[t]here is no literature currently supporting a direct association between CIDP and hepatitis vaccination." Resp. Ex. A at 9; Pet. Ex. 2 at 19.

Dr. Leist further asserted that the onset of symptoms was too soon to be caused by Hep B vaccine. Resp. Ex. A at 12-13; Pet. Ex. 12s. He disputed Dr. Steinman's explanation of a recall response, stating that onset of 3 days is generally accepted for GBS symptoms following flu vaccine, even though most people get a flu vaccine annually and would have a recall response. Resp. Ex. A at 11.

Rather, petitioner's GBS/CIDP was more likely caused by the infection he presented with on April 18, 2017. He added that petitioner had reported at this visit that his daughter had been sick with an upper respiratory infection. Resp. Ex. A at 6, 11-12. The literature shows that infection, even if unknown, is the most common cause of GBS. *Id.* at 8, 12. More specifically, *Greene* demonstrated that "infection had a significantly higher likelihood to be associated with GBS than a non-live vaccine." *Id.* at 11-12; Resp. Ex. A Tab 2.

### C. Respondent's Expert, Dr. Hans Dooms

Dr. Dooms opined that there is "no credible evidence" that the Hep B vaccine can cause GBS. Therefore, an upper respiratory infection was the most likely cause of petitioner's GBS. Resp. Ex. D at 5. Dr. Dooms explained that "robust evidence for a direct causal link [between GBS and vaccination] remains unconvincing," with the one exception of the 1976 flu vaccine. *Id.* at 3-4; Resp. Ex. D Tab 12; Resp. Ex. D Tab 13; Resp. Ex. D Tab 14. Epidemiological evidence excluded the Hep B vaccine as a cause of GBS. Resp. Ex. D at 5; Resp. Ex. D Tab 5; Resp. Ex. D Tab 3. Only "anecdotal case reports or small series" have documented an association between

vaccinations and GBS, and even then, it is based only on temporal association. Resp. Ex. D at 5; Resp. Ex. D Tab 9; Resp. Ex. D Tab 10.

Dr. Dooms addressed Dr. Steinman's theory of molecular mimicry. Resp. Ex. D at 7-8. He asserted that "the structure matters more than the sequence alignment;" thus, homology alone is not evidence that supports that cross reaction occurs between HepBsAg and contactin-1. *Id.*; Resp. Ex. D Tab 21; Resp. Ex. D Tab 20; Resp. Ex. D Tab 17; Resp. Ex. D Tab 6; Resp. Ex. F at 2. Moreover, Dr. Dooms opined that there is a "more convincing case for molecular mimicry between the contactin-1 epitope and influenza virus." Resp. Ex. D at 8. Using the same methodology and resultant sequences as Dr. Steinman, Dr. Dooms found "better matches for these amino acid sequences" in pseudomonas aeruginosa and staphylococcus aureus—the two most common infectious agents in acute otitis—and in several viruses—including influenza—than with the HepBsAg in the Hep B vaccine. *Id.* at 8-12; Resp. Ex. D Tab 15; Resp. Ex. F at 2.

Dr. Dooms submitted that petitioner's infections were the most likely triggers of his GBS. He asserted that GBS is commonly associated with preceding infections, the majority of which remain unidentified. Resp. Ex. D at 3, 5; Resp. Ex. D Tab 11; Resp. Ex. D Tab 12; Resp. Ex. D Tab 22; Resp. Ex. D Tab 13; Resp. Ex. D Tab 14; Resp. Ex. D Tab 16; Resp. Ex. F at 2. Before his neurological symptoms began, petitioner was diagnosed with sinusitis, which is most often viral, and with otitis externa, which is most often bacterial; therefore, he likely had both viral and bacterial infections. Resp. Ex. D at 5-6; Resp. Ex. F at 2.

He further argued that petitioner's GBS may have been exacerbated by the medication(s) petitioner was prescribed for his sinusitis and/or otitis externa. Resp. Ex. D at 6; Resp. Ex. F at 2; FDA Safety Announcement 7-26-2016; Resp. Ex. D Tab 1. He pointed out that peripheral neuropathy is listed as a possible side effect for both Avelox and Levaquin. Resp. Ex. D at 2, 6; Resp. Ex. F at 2.

As for onset, Dr. Dooms conceded that Dr. Steinman's opinion on a recall response due to prior Hep B exposure/vaccination is "not without merit." Resp. Ex. D at 12; Resp. Ex. D Tab 12. In fact, "one can use a similar argument . . . to explain the rapid onset," but instead implicate petitioner's sinusitis and otitis diagnosed on April 18, 2017. Resp. Ex. D at 12.

## IV. Legal Standard

### A. Causation

The Vaccine Act provides two avenues for petitioners to receive compensation. First, a petitioner may demonstrate a "Table" injury—i.e., an injury listed on the Vaccine Injury Table that occurred within the provided time period. § 11(c)(1)(C)(i). "In such a case, causation is presumed." *Capizzano v. Sec'y of Health & Human Servs.*, 440 F.3d 1317, 1320 (Fed. Cir. 2006); *see* § 13(a)(1)(B). Second, where the alleged injury is not listed on the Vaccine Injury Table, a petitioner may demonstrate an "off-Table" injury, which requires that the petitioner "prove by a preponderance of the evidence that the vaccine at issue caused the injury." *Capizzano*, 440 F.3d at 1320; *see* § 11(c)(1)(C)(ii). Initially, a petitioner must provide evidence that he or she suffered, or continues to suffer, from a definitive injury. *Broekelschen v. Sec'y of Health & Human Servs.*, 618 F.3d 1339, 1346 (Fed. Cir. 2010). A petitioner need not show that the vaccination was the sole

cause, or even the predominant cause, of the alleged injury; showing that the vaccination was a "substantial factor" and a "but for" cause of the injury is sufficient for recovery. *See Pafford v. Sec'y of Health & Human Servs.*, 451 F.3d 1352, 1355 (Fed. Cir. 2006); *Shyface v. Sec'y of Health & Human Servs.*, 165 F.3d 1344, 1352 (Fed. Cir. 1999).[10]

To prove causation for an "off-Table" injury, petitioners must satisfy the three-pronged test established in *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274 (Fed. Cir. 2005). *Althen* requires that petitioners show by preponderant evidence that a vaccination petitioner received caused his or her injury "by providing: (1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury." *Id.* at 1278. Together, these prongs must show "that the vaccine was 'not only a but-for cause of the injury but also a substantial factor in bringing about the injury.'" *Stone v. Sec'y of Health & Human Servs*., 676 F.3d 1373, 1379 (Fed. Cir. 2012) (quoting *Shyface*, 165 F.3d at 1352-53). Causation is determined on a case-by-case basis, with "no hard and fast per se scientific or medical rules." *Knudsen v. Sec'y of Health & Human Servs*., 35 F.3d 543, 548 (Fed. Cir. 1994). Petitioners are not required to identify "specific biological mechanisms" to establish causation, nor are they required to present "epidemiologic studies, rechallenge, the presence of pathological markers or genetic disposition, or general acceptance in the scientific or medical communities." *Capizzano*, 440 F.3d at 1325 (quoting *Althen*, 418 F.3d at 1280). "[C]lose calls regarding causation are resolved in favor of injured claimants." *Althen*, 418 F.3d at 1280.

Each of the *Althen* prongs requires a different showing. The first *Althen* prong requires petitioner to provide a "reputable medical theory" demonstrating that the vaccines received *can* cause the type of injury alleged. *Pafford*, 451 F.3d at 1355-56 (citation omitted). To satisfy this prong, petitioner's "theory of causation must be supported by a 'reputable medical or scientific explanation.'" *Andreu ex rel. Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009) (quoting *Althen*, 418 F.3d at 1278). This theory need only be "legally probable, not medically or scientifically certain." *Id.* at 1380 (emphasis omitted) (quoting *Knudsen*, 35 F.3d at 548). Nevertheless, "petitioners [must] proffer trustworthy testimony from experts who can find support for their theories in medical literature." *LaLonde v. Sec'y of Health & Human Servs.*, 746 F.3d 1334, 1341 (Fed. Cir. 2014).

The second *Althen* prong requires proof of a "logical sequence of cause and effect." *Capizzano*, 440 F.3d at 1326 (quoting *Althen*, 418 F.3d at 1278). In other words, even if the vaccinations can cause the injury, petitioner must show "that it did so in [this] particular case." *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 962 n.4 (Fed. Cir. 1993) (citation omitted). "A reputable medical or scientific explanation must support this logical sequence of cause and effect," *id.* at 961 (citation omitted), and "treating physicians are likely to be in the best position to determine whether a logical sequence of cause and effect show[s] that the vaccination was the reason for the injury," *Paluck v. Sec'y of Health & Human Servs.*, 786 F.3d 1373, 1385 (Fed. Cir. 2015) (quoting *Andreu*, 569 F.3d at 1375). Petitioner is not, however, required "to eliminate

[10] The Vaccine Act also requires petitioners to show by preponderant evidence the vaccinee suffered from the "residual effects or complications" of the alleged vaccine-related injury for more than six months, died from the alleged vaccine-related injury, or required inpatient hospitalization and surgical intervention as a result of the alleged vaccine-related injury. § 11(c)(1)(D). This requirement is not at issue in this case.

alternative causes as part of establishing [their] prima facie case." *Doe v. Sec'y of Health & Human Servs.*, 601 F.3d 1349, 1357-58 (Fed. Cir. 2010); *see Walther v. Sec'y of Health & Human Servs.*, 485 F.3d 1146, 1152 (Fed. Cir. 2007) (holding that a "petitioner does not bear the burden of eliminating alternative independent potential causes").

To satisfy the third *Althen* prong, petitioner must establish a "proximate temporal relationship" between the vaccination and the alleged injury. *Althen*, 418 F.3d at 1281. This "requires preponderant proof that the onset of symptoms occurred within a timeframe for which, given the medical understanding of the disorder's etiology, it is medically acceptable to infer causation-in-fact." *De Bazan v. Sec'y of Health & Human Servs.*, 539 F.3d 1347, 1352 (Fed. Cir. 2008). Typically, "a petitioner's failure to satisfy the proximate temporal relationship prong is due to the fact that onset was too late after the administration of a vaccine for the vaccine to be the cause." *Id.* However, "cases in which onset is too soon" also fail this prong; "in either case, the temporal relationship is not such that it is medically acceptable to conclude that the vaccination and the injury are causally linked." *Id.*; *see also Locane v. Sec'y of Health & Human Servs.*, 685 F.3d 1375, 1381 (Fed. Cir. 2012) ("[If] the illness was present before the vaccine was administered, logically, the vaccine could not have caused the illness.").

## B. Fact Finding

The process for making determinations in Vaccine Program cases regarding factual issues begins with analyzing the medical records, which are required to be filed with the petition. § 11(c)(2). Medical records created contemporaneously with the events they describe are generally considered to be more trustworthy. *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993); *but see Kirby v. Sec'y of Health & Human Servs.*, 993 F.3d 1378, 1382-83 (Fed. Cir. 2021) (clarifying that *Cucuras* does not stand for proposition that medical records are presumptively accurate and complete). While not presumed to be complete and accurate, medical records made while seeking treatment are generally afforded more weight than statements made by petitioner after-the-fact. *See Gerami v. Sec'y of Health & Human Servs.*, No. 12-442V, 2013 WL 5998109, at *4 (Fed. Cl. Spec. Mstr. Oct. 11, 2013) (finding that contemporaneously documented medical evidence was more persuasive than the letter prepared for litigation purposes), *mot. for rev. denied*, 127 Fed. Cl. 299 (2014). Indeed, "where later testimony conflicts with earlier contemporaneous documents, courts generally give the contemporaneous documentation more weight." *Campbell ex rel. Campbell v. Sec'y of Health & Human Servs.*, 69 Fed. Cl. 775, 779 (2006); *see United States v. U.S. Gypsum Co.*, 333 U.S. 364, 396 (1948). In short, "the record as a whole" must be considered. § 13(a).

## C. Evaluating Expert Testimony

Establishing a sound and reliable medical theory connecting the vaccine to the injury often requires a petitioner to present expert testimony in support of his or her claim. *Lampe v. Sec'y of Health & Human Servs.*, 219 F.3d 1357, 1361 (Fed. Cir. 2000). The Supreme Court's opinion in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), requires that courts determine the reliability of an expert opinion before it may be considered as evidence. "In short, the requirement that an expert's testimony pertain to 'scientific knowledge' establishes a standard of evidentiary reliability." *Id.* at 590 (citation omitted). Thus, for Vaccine Act claims, a "special

master is entitled to require some indicia of reliability to support the assertion of the expert witness." *Moberly ex rel. Moberly v. Sec'y of Health & Human Servs.*, 592 F.3d 1315, 1324 (Fed. Cir. 2010). The *Daubert* factors are used in weighing the reliability of scientific evidence proffered. *Davis v. Sec'y of Health & Human Servs.*, 94 Fed. Cl. 53, 66-67 (2010) ("uniquely in this Circuit, the *Daubert* factors have been employed also as an acceptable evidentiary-gauging tool with respect to persuasiveness of expert testimony already admitted"). Where both sides offer expert testimony, a special master's decision may be "based on the credibility of the experts and the relative persuasiveness of their competing theories." *Broekelschen*, 618 F.3d at 1347 (citing *Lampe*, 219 F.3d at 1362). And nothing requires the acceptance of an expert's conclusion "connected to existing data only by the *ipse dixit* of the expert," especially if "there is simply too great an analytical gap between the data and the opinion proffered." *Snyder ex rel. Snyder v. Sec'y of Health & Human Servs.*, 88 Fed. Cl. 706, 743 (2009) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

### D. Consideration of Medical Literature

Finally, although this decision discusses some but not all of the literature in detail, the undersigned reviewed and considered all of the medical records and literature submitted in this matter. *See Moriarty ex rel. Moriarty v. Sec'y of Health & Human Servs.*, 844 F.3d 1322, 1328 (Fed. Cir. 2016) ("We generally presume that a special master considered the relevant record evidence even though [s]he does not explicitly reference such evidence in h[er] decision."); *Simanski v. Sec'y of Health & Human Servs.*, 115 Fed. Cl. 407, 436 (2014) ("[A] Special Master is 'not required to discuss every piece of evidence or testimony in her decision.'") (citation omitted), *aff'd*, 601 F. App'x 982 (Fed. Cir. 2015).

## V. Discussion

A dispute existed regarding whether GBS and CIDP are a continuum of the same disease or two different diseases. Petitioner and Dr. Steinman argued that petitioner was first diagnosed with GBS then subsequently with CIDP and that CIDP is the chronic form of GBS. Pet. Ex. 10 at 8. Respondent disagreed, arguing that the two diseases are distinct and that "there is no question that petitioner['s] proper diagnosis is CIDP." Response at 15. Respondent's argument, however, is inconsistent with his own expert. Dr. Leist "concur[red] with the treating physicians that [petitioner] suffered from GBS," but also asserted that it was immaterial to his opinion whether petitioner had GBS or CIDP. Resp. Ex. A at 8, 13. Dr. Dooms did not address this issue at all. *See generally* Resp. Ex. D; Resp. Ex. F. Thus, the only expert who addressed whether GBS and CIDP are distinct diseases or a continuum of the same disease was Dr. Steinman. Respondent's argument relied on legal arguments based on other cases, which were considered but are not binding on the undersigned. Response at 13-14; *Boatmon v. Sec'y of Health & Human Servs*., 941 F.3d 1351, 1358-59 (Fed. Cir. 2019).

Special masters including the undersigned have addressed this issue, referring to the two diseases as "related" peripheral neuropathies with a number of overlapping symptoms that "may" share a common pathogenesis. *See Daily v. Sec'y of Health & Human Servs*., 2011 WL 2174535 (Fed. Cl. Spec. Mstr. May 11, 2011) (finding that a theory of CIDP caused by molecular mimicry is plausible based on the premises that vaccination can cause GBS, molecular mimicry can cause

GBS, and there is a biological basis for similarity between GBS and CIDP); *Davis v. Sec'y of Health & Human Servs.*, No. 14-978V, 2022 WL 1654743, at *1, 33 (Fed. Cl. Spec. Mstr. Apr. 27, 2022). Although this finding is not universal in vaccine cases, the experts in the cases where GBS was found to be a disease distinct from CIDP specifically opined on that issue. *See, e.g., White v. Sec'y of Health & Human Servs.*, No. 18-592V, 2023 WL 5567213, at *21 (Fed. Cl. Spec. Mstr. Aug. 4, 2023). Here, Dr. Steinman's opinion that CIDP is the chronic form of GBS was unrebutted by respondent's experts. The finding that CIDP is the chronic form of GBS is further supported by the literature petitioner cited in this case. Pet. Ex. 12c at 4 ("CIDP is closely related to Guillain-Barre syndrome and it is considered the chronic counterpart of that acute disease"); Pet. Ex. 12d at 1 ("Guillain-Barre syndrome (GBS) is an acute inflammatory disease of the peripheral nerves . . . A chronic form of this illness may present with progressive symptoms and result in CIDP (Chronic inflammatory demyelinating polyneuropathy)").

To that end, petitioner must prove that the Hep B vaccine was the cause-in-fact of his GBS then CIDP to be found entitled to compensation. All three *Althen* prongs are in dispute.

### A. *Althen* Prong 1

The first *Althen* prong requires petitioner to provide a "reputable medical theory" demonstrating that the vaccine received *can* cause the type of injury alleged. *Pafford*, 451 F.3d at 1355-56 (citation omitted). To satisfy this prong, petitioner's "theory of causation must be supported by a 'reputable medical or scientific explanation.'" *Andreu*, 569 F.3d at 1379 (quoting *Althen*, 418 F.3d at 1278). This theory need only be "legally probable, not medically or scientifically certain." *Id.* at 1380 (emphasis omitted) (quoting *Knudsen*, 35 F.3d at 548).

Dr. Steinman argued that the Hep B vaccine can cause GBS/CIDP via molecular mimicry between a component of the Hep B vaccine and contactin-1. According to Dr. Steinman, contactin-1 has been identified by the scientific community as a potential target of the immune system in CIDP. Pet. Ex. 10 at 10, 17-18; Pet. Ex. 12k; Pet. Ex. 12l; Pet. Ex. 13 at 4. Dr. Steinman found sequences present in both HepBsAg and in contactin-1, with 6 of 12 amino acids being identical. Neuroinflammation has been induced in animal studies where only 5 amino acids were identical. Pet. Ex. 10 at 10-18; Pet. Ex. 12m; Pet. Ex. 12n; Pet. Ex. 12o; Pet. Ex. 13 at 5.

Dr. Dooms and Dr. Leist argued that the available evidence does not show a "direct causal link" between the Hep B vaccine and GBS. Resp. Ex. A at 9, 13; Resp. Ex. D at 3-4. In fact, the only vaccine to have been associated with the onset of GBS was the 1976 flu vaccine. Resp. Ex. D at 3-4. Other vaccines have only been implicated in GBS through case reports, which can merely provide a temporal association. Resp. Ex. D at 5; Resp. Ex. D Tab 9; Resp. Ex. D Tab 10. Large-scale studies and epidemiology show no increased risk of GBS with Hep B vaccine. Resp. Ex. D at 5; Resp. Ex. D Tab 5; Resp. Ex. D Tab 3.

Replicating Dr. Steinman's process, Dr. Dooms found a "more convincing case for molecular mimicry" between contactin-1 and several viruses and bacteria that commonly cause acute otitis infections. Resp. Ex. D at 8-12; Resp. Ex. D Tab 15; Resp. Ex. F at 2.

Drs. Leist and Dooms did not dispute molecular mimicry as the likely causal mechanism behind immune-mediated neuropathies such as GBS and CIDP. The literature cited by Dr. Steinman supported his argument that contactin-1 may be attacked in CIDP. Dr. Steinman cited *Fehmi*, which concluded that antibodies against contactin and contactin-associated protein are linked to "phenotypically distinct peripheral neuropathies." Pet. Ex. 12k at 1. Specifically, *Fehmi* found that contactin-1 is associated with AIDP and CIDP at the paranodes, with "notable phenotypic features" including aggressive disease onset, motor predominant, and poor response to IVIG. *Id.* at 2, Table 1. Furthermore, *Fehmi* found that "around 10% of patients with CIDP have a distinct . . . association with IgG antibodies against [contactin-1] or NF155." *Id.* at 7.

Dr. Steinman also cited *Miura*, which "aimed to describe the clinical and serological features of Japanese [CIDP] patients displaying the anti-contactin 1 antibodies." Pet. Ex. 12l at 1. The authors identified contactin 1 as one of the targets of IgG autoantibodies in some of the CIDP patients studied, which corroborated the findings in a recent Spanish study where IgG4 autoantibodies to contactin 1 were found in CIDP patients who had aggressive symptom onset and poor response to IVIG. *Id.* at 2. In *Miura*, all 13 of the anti-contactin 1 positive patients studied presented with sensory ataxia and only 4 out of 10 had a good response to IVIG. *Id.* at 3. Based on these results, the authors concluded that anti-contactin 1 IgG4 antibodies are associated with CIDP patients showing sensory ataxia and a tendency towards a good response to corticosteroids rather than IVIG. *Id.*

In providing his opinion, Dr. Dooms appeared to endorse Dr. Steinman's process for identifying amino acid sequences present in both contactin-1 and the Hep B vaccine. Though there may have been closer homology in the sequences Dr. Dooms found in viruses or bacteria, that does not negate the homology seen with HepBsAg. Dr. Steinman provided several studies that supported his position that 5 shared amino acids are sufficient to trigger autoimmunity. The sequences Dr. Steinman identified in this case had 6 identical amino acids. Pet. Ex. 10 at 10-18; Pet. Ex. 12m; Pet. Ex. 12n; Pet. Ex. 12o; Pet. Ex. 13 at 5.

Summarily, Dr. Steinman provided a persuasive theory of causation, identified contactin-1 as a potential target of autoantibodies in CIDP, and demonstrated sequence homology between contactin-1 and HepBsAg found in the Hep B vaccine. Respondent's primary counter argument to *Althen* Prong 1 was that the Hep B vaccine has not been associated with "an increased risk" of GBS in epidemiology or large-scale studies not that it cannot occur. While I appreciate this argument, the standard for proving causation in science is—understandably—different from that in the Vaccine Program. Requiring scientific certainty impermissibly elevates a petitioner's burden beyond what Congress contemplated when designing a no-fault compensation program where close calls are to be resolved in favor of injured claimants. *Andreu*, 569 F.3d at 1378; § 1.

Furthermore, other special masters have found the theory that Hep B vaccine can cause GBS/CIDP via molecular mimicry persuasive. *Osso v. Sec'y of Health & Human Servs.*, No. 18-575V, 2023 WL 5016473, at *23-24 (Fed. Cl. Spec. Mstr. July 13, 2023); *Gilbert*, No. 04-455V, 2006 WL 1006612, at *1, 12. *But see Nguyen v. Sec'y of Health & Human Servs.*, No. 20-1719V, 2026 WL 1999281, at *1, 4 (Fed. Cl. Spec. Mstr. June 22, 2026) (finding the petitioner failed to satisfy *Althen* Prong 1 in a Hep B/GBS case which involved different experts, neither of which had any special qualifications in immunology but with "the lack of expertise in

immunology…more a detriment to [the petitioner] because he, as the petitioner, bears the burden of presenting a persuasive case.”).

Petitioner has provided preponderant evidence of a sound and reliable theory to satisfy *Althen* Prong 1.

**B. *Althen* Prong 2**

To satisfy the second prong of *Althen*, a petitioner must establish a “logical sequence of cause and effect showing that the vaccination was the reason for the injury.” *Althen*, 418 F.3d at 1278. The sequence of cause and effect need only be “logical and legally probable, not medically or scientifically certain.” *Knudsen*, 35 F.3d at 548-49; *accord Capizzano*, 440 F.3d at 1326. In other words, even if the vaccination can cause the injury alleged, petitioner must show “that it did so in [this] particular case.” *Hodges*, 9 F.3d at 962 n.4 (citation omitted).

Dr. Steinman asserted that the Hep B vaccination was the most likely cause of petitioner’s GBS/CIDP. He did not dispute that infections are the most common cause of GBS generally, and he conceded that petitioner may have had a “competing diagnosis” of sinusitis prior to the onset of neurological symptoms. However, he placed more weight on the “known vaccine” than an unidentified infection. Pet. Ex. 10 at 22; Pet. Ex. 13 at 1-2, 7.

Dr. Leist asserted that petitioner’s infection diagnosed on April 18, 2017 was the most likely trigger of his GBS. Resp. Ex. A at 6, 8, 11-12. Dr. Dooms concurred and added that the medications petitioner was prescribed – Avelox and Levaquin – possibly contributed to or further exacerbated the autoimmune process initially triggered by the infection. Resp. Ex. D at 2, 5-6; Resp. Ex. F at 2.

Literature supports infections as most commonly preceding the onset of GBS. *See, e.g.,* Resp. Ex. D Tab 11 at 1 (“approximately two-thirds of [GBS] patients report some form of preceding infectious illness”); Resp. Ex. D Tab 12 at 1 (“In about 60% of cases, GBS is preceded by an infection”); *see also* Resp. Ex. D Tab 13 at 2; Resp. Ex. D Tab 14 at 3; Resp. Ex. D Tab 16 at 1. Nonetheless, one cannot rely on “bare statistic[s]” to determine what most likely occurred in a specific case. *Knudsen*, 35 F.3d at 550. Infections as a common cause of GBS does not necessarily mean that an infection played a role in causing <u>this</u> petitioner’s GBS/CIDP.

While the record in this case included a diagnosis and treatment of sinusitis, Dr. Steinman was correct that a specific infection was not identified. The record further included evidence of petitioner’s longstanding history of seasonal allergies. Pet. Ex. 3 at 3, 7; Pet. Ex. 4 at 763, 789; *see generally* Pet. Ex. 14. Further, petitioner affirmed that April is generally the worst month for his allergies. Pet. Ex. 14 at 2. The later medical records documented that petitioner had no symptoms of an infection or illness around the time of onset of his injury in April of 2017. Pet. Ex. 2 at 15-16, 19; Pet. Ex. 4 at 1811; Pet. Ex. 5 at 9, 12.

But even if it were accepted that petitioner had an infection prior to the onset of symptoms, that would not preclude a finding that the Hep B vaccine was a substantial factor amongst several in causing his injury. *Walther*, 485 F.3d at 1149-52; *Pafford*, 451 F.3d at 1355; *Shyface*, 165 at

1352. This type of situation was contemplated by the Federal Circuit in *Shyface*, which held that a petitioner need not prove the vaccination was the predominant factor in bringing about the injury, just that it was a substantial factor. In *Shyface*, the child received a DPT vaccine while incubating an E. coli infection. Because it was not possible to determine whether the vaccine or the infection was the predominant factor, the Federal Circuit found that both were substantial factors in bringing about the child's death. *Shyface*, 165 F.3d at 1352-53.

Special masters have since found that where there is a concurrent infection with vaccination, both may be substantial factors in bringing about the injury alleged. *Herkert v. Sec'y of Health & Human Servs.*, No. 97-518V, 2000 WL 141263, at *1 (Fed. Cl. Spec. Mstr. Jan. 19, 2000) (finding petitioner proved the DTaP vaccine and cytomegalovirus infection were both substantial factors in causing his son's transverse myelitis); *Nash v. Sec'y of Health & Human Servs*., No. 00-149V, 2002 WL 1906501, at *1 (Fed. Cl. Spec. Mstr. June 27, 2002) (finding both meningitis infection and DPT vaccination were substantial factors in causing the child's condition). Likewise, where there are concurrent factors of infection and vaccination, I have found that both are substantial factors in the resulting injuries or death. *See Lehrman v. Sec'y of Health & Human Servs*., No. 13–901, 2018 WL 1788477, at *1 (Fed. Cl. Spec. Mstr. Mar. 19, 2018); *Matten v. Sec'y of Health & Human Servs*., No. 12-155V, 2021 WL 5768148, at *1 (Fed. Cl. Spec. Mstr. Nov. 2, 2021).

Furthermore, Dr. Dooms argued that the medications petitioner was prescribed could have exacerbated his condition, lending credibility to the notion that multiple factors could have been at play in this specific case in bringing about petitioner's ultimate injury. It is notable that petitioner affirmed that he never filled the prescription for Avelox because he fell at the pharmacy from leg weakness. Pet. Ex. 14 at 1.

Petitioner presented with sensory ataxia and motor dysfunction, an aggressive onset of symptoms, and lack of response to IVIG initially, similar to CIDP patients with anti-contactin 1 antibodies studied and discussed in *Miura* and *Fehmi,* although he was never tested. *Miura* studied the symptoms of CIDP patients with anti-contactin 1 antibodies and found that they all had sensory ataxia and only 40% of the patients studied had a good response to IVIG. These findings supported the results of a different study where IgG4 autoantibodies to contactin 1 were found in CIDP patients who had aggressive symptom onset and poor response to IVIG. Pet. Ex. 12l at 1-3. Similarly, *Fehmi* found that contactin-1 autoantibodies are associated with AIDP and CIDP presenting with aggressive disease onset, motor predominant, and poor response to IVIG. Pet. Ex. 12k at 2, Table 1.

In this case, petitioner presented to the ED on April 18, 2017 with one day of weakness and paresthesia in his extremities which resulted in a fall earlier that day. Pet. Ex. 4 at 107, 129. Visit notes from April 24, 2017 documented paresthesias and paralysis of the lower extremities that had progressed to his chest and face with "fine motor control…lost." *Id.* at 65-66. The discharge summary on April 25, 2017 included the completion of a five-day course of IVIG but still without reflexes and with weakness in the lower extremities. *Id*. at 69. Examination that day revealed weakness, areflexia, and sensory loss. Pet. Ex. 2 at 19. While not dispositive, his presentation lends some support to the notion that petitioner had anti-contactin 1 antibodies after

the vaccine, which supports Dr. Steinman's theory in this case that the HepBsAg in the vaccine could cross react with contactin-1 to cause CIDP.

Furthermore, the caselaw instructs that treating physicians are likely to be in the "best position to determine whether a logical sequence of cause and effect" exists between a vaccine and a petitioner's symptoms. *Paluck*, 786 F.3d at 1385. The records in this case on numerous occasions reflect the treaters' beliefs that petitioner's condition was associated with his recent vaccination. Pet. Ex. 4 at 60, 68-69, 130, 156, 1408-09. Petitioner's neurologist specifically noted that the sequence of events raises the "strong possibility" that the Hep B vaccine was the cause of petitioner's CIDP. Pet. Ex. 2 at 19; Pet. Ex. 5 at 9.

Overall, respondent's argument regarding infection was broad and relied on generalities. There was inadequate evidence in this case to support an exclusively infectious cause. These broad arguments failed to refute petitioner's evidence that the Hep B vaccine played a substantial role in his GBS/CIDP.[11] Thus, petitioner has sustained his burden in proving by preponderant evidence a logical sequence of cause and effect between the Hep B vaccine and his condition.

### C. *Althen* Prong 3

The third *Althen* prong requiring an appropriate temporal relationship contains two parts. First, a petitioner must establish the "timeframe for which it is medically acceptable to infer causation" and second, she must demonstrate that the onset of the disease occurred in this period. *Shapiro v. Sec'y of Health & Human Servs.,* 101 Fed. Cl. 532, 542-43 (2011), *recons. denied after remand on other grounds*, 105 Fed. Cl. 353 (2012), *aff'd without op.,* 503 F. App'x 952 (Fed. Cir. 2013). The explanation for what is a medically acceptable timeframe must coincide with the theory of how the relevant vaccine can cause an injury utilized to satisfy the first prong. *Id.* at 542; *Koehn v. Sec'y of Health & Human Servs*., No. 11-355V, 2013 WL 3214877 (Fed. Cl. Spec. Mstr. May 30, 2013), *mot. for review den'd* (Fed. Cl. Dec. 3, 2013), *aff'd*, 773 F.3d 1239 (Fed. Cir. 2014).

There is no dispute that petitioner's symptoms began within two days of his receipt of the Hep B vaccine. Dr. Steinman asserted that two days is a medically reasonable timeframe for onset because petitioner had Hep B antibodies—either from prior Hep B vaccination or exposure—at the time he received the vaccine. Pet. Ex. 10 at 18-19, 22; Pet. Ex. 12o; Pet. Ex. 12p; Pet. Ex. 12q; Pet. Ex. 12r. Dr. Leist disputed a recall response, arguing that onset of 3 days is generally accepted for GBS symptoms following flu vaccine, even though most people get a flu vaccine annually thus would have a recall response. Resp. Ex. A at 11-13; Pet. Ex. 12s. Dr. Dooms stated that Dr. Steinman's opinion on a recall response because of prior Hep B exposure/vaccination is "not without merit." Resp. Ex. D at 12; Resp. Ex. D Tab 12.

Dr. Leist's comparison with flu vaccine, while interesting, fails to consider a glaring difference between an annual flu vaccine and the instant case. Though not specifically addressed

[11] When a petitioner proves a prima facie case of causation, the burden shifts to respondent to prove by preponderant evidence that an alternative cause, unrelated to the vaccination, was the sole substantial factor in causing petitioner's injury. *De Bazan*, 539 F.3d at 1354; *Knudsen*, 35 F.3d at 548. For the reasons stated in the discussion of Prong 2, the evidence is not sufficient to conclude petitioner's possible infection was the sole substantial factor in causing his GBS/CIDP.

by any expert in this case, annual flu vaccines are needed because the strains of the virus change year to year and protection may decrease. Antibodies created in response to a flu vaccine from one year may provide only limited protection against the flu strain the following year. Here, the medical records show that petitioner had Hep B antibodies just 7 days prior to receiving the Hep B vaccine. Pet. Ex. 1 at 10-12. Thus, while a 3-day onset is generally accepted in flu/GBS Table cases, a quicker recall response makes sense here and Dr. Leist's comparison to the annual flu vaccine was unpersuasive. More persuasive is Dr. Dooms, an immunologist, agreed that a recall response had merit. Resp. Ex. D at 12. Recall responses resulting in quicker onset has been accepted in other vaccine cases. *See, e.g., Quackenbush-Baker v. Sec'y of Health & Human Servs*., No. 14–1000V, 2018 WL 1704523, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 14, 2018); *Davis*, No. 14-978V, 2022 WL 1654743, at *55.

Accordingly, petitioner has satisfied *Althen* Prong 3.

## VI. Conclusion

Petitioner has proven by preponderant evidence that the Hepatitis B vaccine he received on April 14, 2017 was a substantial factor in causing his GBS/CIDP. Therefore, petitioner is entitled to compensation, and this case shall proceed to damages.

**IT IS SO ORDERED.**

**s/ Mindy Michaels Roth**
Mindy Michaels Roth
Special Master

**Appendix: Medical Literature**

| **Exhibit** | **Citation** |
|---|---|
| Pet. Ex. 12c | National Institute of Neurological Disorders and Stroke, *Guillain-Barre Syndrome Fact Sheet*, NIH Publication No. 112902 (2014). |
| Pet. Ex. 12d | Johns Hopkins Medicine, *Health: Conditions and Diseases, Chronic Inflammatory Demyelinating Polyradiculopathy*, https://www.hopkinsmedicine.org/health/conditions-and-diseases/chronic-inflammatory-demyelinating-polyradiculoneuropathy, last visited Oct. 20, 2026. |
| Pet. Ex. 12k | Janev Fehmi et al., *Nodes, Paranodes and Neuropathies*, 89 J. Neurology Neurosurgery Psychiatry 61 (2018). |
| Pet. Ex. 12l | Yumako Miura et al., *Contactin 1 IgG4 Associates to Chronic Inflammatory Demyelinating Polyneuropathy with Sensory Ataxia*, 138 Brain 1484 (2015). |
| Pet. Ex. 12m | Anand M. Gauam et al., *A Polyalanine Peptide with Only Five Native Myelin Basic Protein Residues Induces Autoimmune Encephalomyelitis*, 176 J. Experimental Medicine 605 (1992). |
| Pet. Ex. 12n | Anand M. Gautam et al., *Minimum Structural Requirements for Peptide Presentation by Major Histocompatibility Complex Class II Molecules: Implications in Induction of Autoimmunity*, 91 Proceedings of Nat'l Acad. of Sci. 767 (1994). |
| Pet. Ex. 12o | Anand M. Gautam et al., *A Viral Peptide with Limited Homology to a Self Peptide can Induce Clinical Signs of Experimental Autoimmune Encephalomyelitis*, 161 J. Immunology 60 (1998). |
| Pet. Ex. 12p | Jonathan Baruch Steinman et al., *Reduced Development of COVID-19 in Children Reveals Molecular Checkpoints Gating Pathogenesis Illuminating Potential Therapeutics*, 117 PNAS 24620 (2020). |
| Pet. Ex. 12q | Charles A. Janeway et al., Immunobiology (Sarah Gibbs 5th ed., 2001). |
| Pet. Ex. 12r | Claire-Anne Siegrist, *Vaccine Immunology*, *in* General Aspects of Vaccination (2013). |
| Pet. Ex. 12s | Lawrence B. Schonberger et al., *Guillain-Barre Syndrome Following Vaccination in the National Influenza Immunization Program, United States, 1976-1977*, 110 Am. J. Epidemiology 105 (1979). |
| Resp. Ex. A Tab 2 | Sharon K. Greene et al., *Guillain-Barre Syndrome, Influenza Vaccination, and Antecedent Respiratory and Gastrointestinal Infections: A Case-Centered Analysis in the Vaccine Safety Datalink, 2009-2011*, 8 PLOS e67185 (2013). |
| Resp. Ex. A Tab 4 | K. Stratton et al., Immunization Safety Review Committee Institute of Medicine, *Hepatitis B Vaccine and Demyelinating Neurological Disorders*, Nat'l Acad. Press (2002). |
| Resp. Ex. D Tab 1 | Ayad K. Ali, *Peripheral Neuropathy and Guillain-Barre Syndrome Risks Associated with Exposure to Systemic Fluoroquinolones: A Pharmacovigilance Analysis*, 24 Annals of Epidemiology 279 (2014). |

| | |
|---|---|
| Resp. Ex. D Tab 3 | Roger Baxter et al., *Lack of Association of Guillain-Barre Syndrome with Vaccinations*, 57 Clinical Infectious Diseases 197 (2013). |
| Resp. Ex. D Tab 5 | Frank DeStefano et al., *Principal Controversies in Vaccine Safety in the United States*, 69 Clinical Infectious Diseases 726 (2019). |
| Resp. Ex. D Tab 6 | Robert S. Fujinami & Michael B. A. Oldstone, *Amino Acid Homology Between the Encephalitogenic Site of Myelin Basic Protein and Virus: Mechanism for Autoimmunity*, 230 Science 1043 (1985). |
| Resp. Ex. D Tab 9 | Penina Haber et al., *Vaccines and Guillain-Barre Syndrome*, 32 Drug Safety 309 (2009). |
| Resp. Ex. D Tab 10 | Angelika F. Hahn, *Guillain-Barre Syndrome*, 352 Lancet 635 (1998). |
| Resp. Ex. D Tab 11 | B.C. Jacobs et al., *The Spectrum of Antecedent Infections in Guillain-Barre Syndrome*, 51 Neurology 1110 (1998). |
| Resp. Ex. D Tab 12 | Helmar C. Lehmann et al., *Guillain-Barre Syndrome After Exposure to Influenza Virus*, 10 Lancet Infectious Diseases 643 (2010). |
| Resp. Ex. D Tab 13 | Nicola Principi & Susanna Esposito, *Vaccine-Preventable Diseases, Vaccines and Guillain-Barre Syndrome*, 37 Vaccine 5544 (2019). |
| Resp. Ex. D Tab 14 | Nicola Principi & Susanna Esposito, *Do Vaccines Have a Role as a Cause of Autoimmune Neurological Syndromes?*, 8 Frontiers in Public Health 361 (2020). |
| Resp. Ex. D Tab 15 | Paul Schaefer & Reginald F. Baugh, *Acute Otitis Externa: An Update*, 86 Am. Family Physician 1055 (2012). |
| Resp. Ex. D Tab 16 | Valerie Sivadon-Tardy et al., *Guillain-Barre Syndrome and Influenza Virus Infection*, 48 Clinical Infectious Diseases 48 (2009). |
| Resp. Ex. D Tab 17 | Brian D. Stadinski et al., *Chromogranin A is an Autoantigen in Type 1 Diabetes*, 11 Nature Immunology 225 (2010). |
| Resp. Ex. D Tab 20 | Kai W. Wucherpfennig et al., *Structural Requirements for Binding of an Immunodominant Myelin Basic Protein Peptide to DR2 Isotypes and for its Recognition by Human T Cell Clones*, 179 J. Experimental Med. 279 (1994). |
| Resp. Ex. D Tab 21 | Kai W. Wucherpfennig & Jack L. Strominger, *Molecular Mimicry in T Cell-Mediated Autoimmunity: Viral Peptides Activate Human T Cell Clones Specific for Myelin Basic Protein*, 80 Cell 695 (1995). |
| Resp. Ex. D Tab 22 | Nobuhiro Yuki & Hans-Peter Hartung, *Guillain-Barre Syndrome*, 366 N. Eng. J. Med. 2294 (2012). |